IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Stacy W. Howard, #191458,<br>a/k/a Stacy Howard,<br><br>         Petitioner,<br><br>    vs.<br><br>Cecelia Reynolds, Warden,<br><br>         Respondent. | Civil Action No. 6:09-2088-RBH-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

       The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

       Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

       The record reveals that the petitioner is currently confined in the Kershaw Correctional Institution, of the South Carolina Department of Corrections ("SCDC"), as the result of his convictions and sentences from Georgetown and Williamsburg Counties. The current petition attacks only his 2004 Georgetown County conviction and sentence. The Georgetown County Grand Jury indicted the petitioner at the March 2003 term of court for assault and battery of a high and aggravated nature (ABHAN) (2003-GS-22-246). He was represented on this charge by attorneys Eric Fox and Stuart Axelrod.

On April 22, 2004, the petitioner received a jury trial before the Honorable Paula H. Thomas. The jury found him guilty as charged, and Judge Thomas sentenced him to five years imprisonment, suspended upon the service of 5½ months and two years probation. The petitioner did not appeal his conviction or sentence.

The petitioner filed a *pro se* post-conviction relief ("PCR") application (04-CP-22-586) on July 29, 2004, in which he alleged the following grounds for relief:

> 9(a). "That the conviction and sentence is in violation of the Constitution of the United States, the Constitution of South Carolina, and the laws of said state."

Specifically, he claimed in paragraph 10(a) that "there exists evidence of material facts, not previously presented and heard, as well as heard, that require vacation of the conviction and sentence in the interest of justice." In paragraph 8(a), he claimed that his "lawyer evaded the Applicant's request for appeal, [and] the court eluded the Applicant from his fundamental to appeal, by not apprising the Applicant of that right." The State filed its return on September 2, 2004.

The petitioner thereafter filed a "Complaint," wherein he alleged that SCDC had erroneously calculated his sentence, specifically alleging that:

> the mathematical process of calculation and computation of county time and statutory goodtime is incorrect. Beginning first with the 167 days service in Williamburg [sic] County Detention Center, the commencement from June 22, 2004 to plaintiff's arrival and intake at Kirkland R&E is 189 days, not 167 days, so there is a loss of 22 days service in Williamburg County [sic].

He further claimed that his Georgetown County sentence was erroneously calculated:

> The second miscalculation is the time served in Georgetown County after Judge Thomas's imposition [of] sentence on April 22, 2004, and the time spent thereafter under detainer for ABWIK in the constructive custody of Williamburg [sic] County until Plaintiff made bond . . . on June 22, 2004. See Time Table 6-7. Therefore, in addition to the 22 days owed to Plaintiff, credit for 61 days in Georgetown County toward the two (2) year sentence has not been credited to the sentence, presently

2

> depriving him [of] a total of 83 days time served toward his
> current sentence.

Additionally, he contended that he should have received credit for service of 5½ months on the Williamsburg County sentence based upon service of the Georgetown County sentence, and he raised several allegations unrelated to the 2003 conviction or sentence.

The Honorable Steven H. John convened a hearing into the matter on July 24, 2006, at the Horry County Courthouse. Attorney Candice Lively was present and represented the petitioner. Assistant Attorney General Daniel E. Grigg represented the State. However, the petitioner was not present at the hearing. Judge John filed an Order of Dismissal for Failure to Prosecute on July 25, 2006. Judge John specifically found that the petitioner failed to attend the hearing, although both his attorney and counsel for the State had given him notice of it.

The petitioner then filed a motion to restore the case to the docket, in which he informed the PCR court that he did not know of the hearing and that he wanted to pursue his application. Judge John filed an Order to Restore Post-Conviction Relief on August 1, 2006. In this Order, he vacated the July 26, 2005 Order, and restored the case to the docket.

The Honorable John L. Breeden, Jr., convened a second evidentiary hearing into the matter on September 18, 2006, at the Horry County Courthouse. Ms. Lively was present and, once again, represented the petitioner. Assistant Attorney General Grigg again represented the State. The petitioner had been released on probation by the SCDC on December 15, 2005, and was not present at the hearing. Ms. Lively informed the PCR court that she had not received any substantive contact from the petitioner following his release from prison, despite her efforts to contact him. Ms. Lively had sent notice of the hearing to him, and his name was called three times in the courthouse without a response. The State moved to dismiss the case under Rule 41(b), SCRCP, based on the petitioner's

failure to prosecute. On November 1, 2006, Judge Breeden filed an Order of Dismissal, granting the State's motion to dismiss based upon the petitioner's failure to prosecute. The petitioner did not appeal from this order

The petitioner was tried and convicted on an unrelated Georgetown County ABHAN charge (07-GS 22-0128) on February 27-28, 2007. On February 28, 2007, an arrest warrant was issued charging him with a probation violation. On the same date and following his denial of the petitioner's post-trial motions, the trial judge commenced the sentencing proceeding at the request of the petitioner's trial counsel (R. p. 251, line 14 - p. 252, line 14). After the petitioner's prior record was fully stated by the State, and the prior plea offer was placed upon the record (eight years concurrent to any sentences imposed for probation violations), the trial judge heard from the petitioner's probation officer, who was sworn under oath by the Clerk (R. p. 258, line 8 - p. 259, line 12).

The petitioner's probation officer noted that the jury verdict in the instant case would violate both of the petitioner's probation cases, but that he also had warrants pending in both cases (R. p. 258, lines 21-23). The petitioner's counsel was then given an opportunity to speak on the petitioner's behalf with regard to sentence (R. p. 259, line 24 - p. 263, line 16). Counsel first addressed the two probation matters, stating that "obviously, we absolutely concede that this conclusion (sic) violates both of the probations" (R. p. 260, lines 1-3). In response to the court's question, counsel also stated that the petitioner would have no objection to the "jurisdiction or venue of this court today to hear these probation violations hearings" (R. p. 260, lines 4-7). However, he stated that because the petitioner conceded that "this conviction constitutes a violation of those reports, both of those charges of probation violation," that it would be easier for the trial judge to disregard the disputed prior alleged violations (for which warrants were pending) and only consider this conviction as the violation (R. p. 260, lines 9-18).

4

In response, the probation officer agreed to withdraw the prior two warrants and to "issue a citation charging him only with the new conviction, and disregard the other charges." The petitioner's counsel then indicated that was what they were hoping would occur (R. p. 260, line 24 - p. 261, line 1). The trial court agreed to "limit its consideration on probation violation only then to this violation today for which he has been convicted today and that is a violation of both cases" (R. p. 261, lines 2-5). The trial judge then gave petitioner's counsel the opportunity to speak in mitigation for the petitioner, and counsel asked the trial judge to consider the prior plea offer for concurrent sentencing, and for the court be as lenient as possible, given all the circumstances (R. p. 261, line 6 - p. 263, line 16).

Counsel encouraged the trial judge to consider running everything concurrently, due to the nature, timing, and juxtaposition of the charges. However, if the trial judge could not see fit to do that, counsel alternatively requested that at least the probation violations each run concurrently to the sentence for the instant ABHAN (R. p. 263, lines 2-16). The petitioner was given the opportunity to speak in his own behalf, and he pleaded with the court for mercy (R. p. 263, line 21 - p. 264, line 1). After the trial judge explained his reasoning for the sentence he would impose, he imposed an eight-year sentence on the 2007 ABHAN conviction, and he revoked eight years, consecutive, on the first probation case (December 2004 conviction from Williamsburg County), and four and a half years, consecutive, on the second probation case (April 2004 conviction from Georgetown County) (R. p. 265, line 24 - p. 266, line 8).

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender M. Celia Robinson represented him on appeal. On June 6, 2008, the petitioner filed his Final Brief of Appellant, in which he presented the following issues for review:

> 1.    Did the trial judge err in refusing to grant the motion for a mistrial made in response to the State's witness's testimony attacking appellant's character and portraying appellant as a

drug dealer, as a drug user, and as a man who is casually capable of murder?

> 2. Did the trial judge err in refusing to recuse himself from the case and further err and violate appellant's right to due process of law when he interfered with appellant's presentation of a defense, wrongly removed relevant testimony form the jury's consideration, and in the presence of the jury, wrongly admonished appellant for offering relevant and admissible testimony in his defense?

> 3. Did the trial judge err in allowing in evidence, over objection on the grounds of relevance, of the stun gun and pepper spray found in appellant's pockets?

> 4. Did the trial judge err in admitting appellant's prior ABHAN convictions for the stated purpose of establishing that he was more likely to have committed the crime charged and not for the acceptable legal purpose of challenging the testifying defendant's credibility?

> 5. Did the trial judge err as a matter of law in holding a hearing and revoking appellant's probation on the grounds that the instant conviction constituted a violation of the terms of his probation without a warrant for such violation being issued or served on appellant?

(Final Brief of Appellant at p. 3). The State filed a Final Brief of Respondent on June 6, 2008. Assistant Attorney General Christina J. Catoe represented the State on appeal. On July 1, 2009, the South Carolina Court of Appeals affirmed the petitioner's probation revocation, but reversed the trial judge' ruling on the admission of his prior offenses in the trial of the unrelated ABHAN case and remanded the matter to the trial judge to conduct a hearing on the admissibility of the convictions under *State v. Colf*, 525 S.E.2d 246, 248 (S.C. 2000). *See State v.Howard,* 682 S.E.2d 42 (S.C. Ct. App. 2009). The court specifically rejected the petitioner's challenge to his probation revocation, as follows:

> Howard argues the trial court erred in holding a probation revocation hearing and revoking his probation without a probation violation warrant. We disagree.

> During sentencing after Howard's ABHAN trial, the court heard from Agent Brown, Howard's probation officer. Agent Brown

informed the court Howard had pending warrants in *224 two probation cases for failure to report, failure to notify of arrest, and failure to follow instructions of probation agent. Defense counsel conceded his client's ABHAN conviction constituted a violation of his probation cases, and indicated he had no objection to the "jurisdiction or venue of this court today to hear these probation violation hearings." Additionally, defense counsel suggested the court only consider Howard's ABHAN conviction as the violation. In response, the Department of Probation agreed to withdraw the prior two warrants and "issue a new citation charging [Howard] only with the new conviction, and disregard the other charges." The court asked defense counsel if he had any objection to this procedure and he indicated that he had "none whatsoever."

Pursuant to section 24-21-450 of the South Carolina Code (2007) a warrant must be issued and the probationer must be served with the warrant before probation can be revoked. However, section 24-21-300 of the South Carolina Code (2007) permits the use of a citation and affidavit in lieu of a warrant. The probation citation in the record indicates Howard was served with the citation during sentencing following his ABHAN conviction. Accordingly, because Howard was served with the citation the trial court did not err in holding a probation revocation hearing and revoking Howard's probation.

682 S.E.2d at 48. The Court of Appeals sent the remittitur to the Georgetown County Clerk of Court on September 29, 2009.

Meanwhile, the petitioner had filed a *pro se* PCR application (07-CP-22-0912) on July 10, 2007. He alleged the following grounds for relief in his application:

1.      "Constitutional, Statutory, and Rule Violations," to include "lack of jurisdiction to impose the sentence or to reconstruct it at a latter time," sentence is excessive; "probation has been unlawfully revoked;" and sentence exceeds the maximum."

2.      "Ineffective Assistance of Counsel," to include trial counsel, counsel at his first probation violation hearing, and counsel at his second probation hearing.

3.      "New Matter," to include "the use of fabricated evidence," "prosecutorial misconduct," failure to disclose favorable evidence, "grand jury which was unconstitutionally selected," and "violation of clearly recognized state precedents.

7

The State filed its Return and Partial Motion to Dismiss on August 9, 2007. The State argued that the claims related to trial counsel were successive and barred by the statute governing the filing of PCR applications, S.C. Code Ann. § 17-27-45(A) (Supp. 2009). The State further argued that it was entitled to judgment on any claim as to the first probation hearing because he did not serve any active time thereon.

Judge John held a hearing into the matter on May 1, 2008, at the Horry County Courthouse. The petitioner was present at the hearing, and attorney R. Scott Joye represented him. Assistant Attorney General Christina J. Catoe represented the State. Before addressing other matters, Judge John heard and denied the petitioner's Motion to recuse Judge John as the PCR judge. He found that the petitioner's objections were without merit and that there was no any factual basis for recusal. Judge John also denied the petitioner's motion to relieve Mr. Joye as his counsel based upon alleged misconduct because he found no misconduct and that the petitioner was not entitled to substitute counsel in this particular matter.[1] Judge John likewise denied the petitioner's motion for discovery because the petitioner had not established "good cause" under S.C. Code Ann. § 17-27-150(a).

At the outset of the hearing, the State moved to dismiss the 2007 application as impermissibly successive and as time-barred under S.C. Code Ann. § 17-27-45(A). The subsequently filed Final Order of Dismissal reflects that, at that point, Judge John had before him the petitioner's entire PCR file, including all pleadings, the Georgetown County Clerk of Court's records relating to the conviction. The petitioner and his prior PCR attorney PCR attorney, Candice A. Lively, testified at the hearing. At the conclusion of the hearing,

---

[1]With the State's consent, however, he granted the motion to relieve Mr. Joye as counsel in Petitioner's unrelated, second PCR action from another county, 07-CP-26-1127, as the result of a conflict of interest.

Judge John determined that the State's motion to dismiss should be granted and that the application should be dismissed.

On May 15, 2008, Judge John signed a Final Order of Dismissal (Statute of Limitations; Successive), in which he dismissed the application with prejudice. He found that it was successive and barred by the statute of limitations and that the petitioner had failed to prove that he is entitled to raise his allegations in a successive application:

> First, this Court finds that the testimony of Attorney Lively was both credible and believable. Conversely, the testimony of the Applicant was neither credible nor believable on the pertinent factual issues. This Court further finds that Ms. Lively gave the Applicant proper notice of the September 2006 PCR hearing, both by letter to the address he provided, and via telephone prior to the hearing. She specifically advised him that the dismissal would be permanent and with prejudice. She even followed up by letter immediately after the hearing, within the appeal period, and still received no response from the Applicant. Ms. Lively did everything reasonably within her power to pursue the case on Mr. Howard's behalf, but this Court finds that Mr. Howard ignored the direct contact of his attorney although he was properly given notice of the second hearing, and was properly advised of the consequences of his failure to appear. The September 2006 court properly dismissed the Applicant's PCR under Rule 41 (b), to failure to prosecute the action. This Court finds and concludes that the Applicant waived his "bite at the apple."
>
> Accordingly, because this Court finds that the first action was properly dismissed after the Applicant received appropriate notice, this Court must grant the State's Motion to Dismiss the current Application on the grounds that it is impermissibly successive and was filed beyond the expiration of the statute of limitations.

Final Order of Dismissal, pp. 5-6. In finding that the application was barred by the statute of limitations, Judge John found as follows:

> In addition, this Court finds that the current Application must be summarily dismissed for failure to comply with the filing procedures of the Uniform Post-Conviction Procedure Act. S.C. Code Ann. §17-27-10 to -160 (2003). S.C. Code Ann. §17-27-45(A) reads as follows:

9

An application for relief filed pursuant to this chapter must be filed within one year after the entry of a judgment of conviction or within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later.

The statute of limitations applies to all applications filed after July 1, 1996. Peloquin v. State, 321 S.C. 468, 469 S.E.2d 606 (1996). The underlying conviction which the Applicant challenges in this Application occurred on April 22, 2004. This Application was filed on July 10, 2007, over two years after the statutory filing period expired in April of 2005. Accordingly, in addition to being successive, the Application also comes too late and must be denied and dismissed.

Final Order of Dismissal, pp. 5-6.

The petitioner timely served and filed a notice of appeal, through Mr. Joye. However, in accordance with Rule 227(c), SCACR,[2] Mr. Joye also informed the court that he was "unable to provide any arguable basis for asserting the determination by the PCR judge that the PCR application was successive and/or barred by the statute of limitations was improper." *See* May 20, 2008, letter from R. Scott Joye to the Hon. Daniel Shearhouse. *See also Dennison v. State*, 639 S.E.2d 35 (S.C. 2006).

After the petitioner made a *pro se* request for an extension of time or a stay because a post-trial motion was pending in the trial court, the South Carolina Supreme Court filed a July 2, 2008, order denying this request. The court also denied the petitioner's request for transcripts of the hearings in 04-CP-22-586 and 07-CP-22-0912 before he made the Rule 227(c) response and gave the petitioner 15 days within with to make a *pro se* response under Rule 227(c). The petitioner thereafter submitted a response. However, the

---

[2]Rule 227(c) provides: "(c) Explanation Required. If the lower court has determined that the post-conviction relief action is barred as successive or being untimely under the statute of limitations, the petitioner must, at the time the notice of appeal is filed, provide an explanation as to why this determination was improper. This explanation must contain sufficient facts, argument and citation to legal authority to show that there is an arguable basis for asserting that the determination by the lower court was improper. If the petitioner fails to make a sufficient showing, the notice of appeal may be dismissed."

court filed an order dismissing the appeal on August 1, 2008, pursuant to Rule 227(c) because "[P]etitioner has failed to show that there is an arguable basis for asserting that the determination by the lower court was improper." The court sent the remittitur to the Georgetown County Clerk of Court on October 8, 2008.

In his petition now before this court, the petitioner raises the following allegations:

> **GROUND ONE:** This is an actual claim and a request to be allowed to pass through the gateway to argue the merits of same, so that a miscarriage of justice will not occur.
>
> **SUPPORTING FACTS:** [Petitioner is entitled to the relief requested because (1) fabricated information was included to establish probable cause for the arrest warrant, and there was no probable cause to obtain a warrant; (2) he was denied his right to counsel at a preliminary hearing; (3) he was denied his right to cross-examine the victim at the preliminary hearing where she was not permitted to testify and an officer read information concerning the facts of the crime; (4) the prosecutor improperly obtained the indictment because the solicitor or his assistant(s) was the sole witness before the Grand Jury, and fabricated or misleading evidence was presented to the Grand Jury; (5) ineffective assistance of counsel because counsel erred by withholding the eyewitness testimony of Coy Marshal Jones, and the testimony of a private investigator, Gerald J. Roumlbehler; (6) the prosecution violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963) by withholding these favorable witnesses; and (7) ineffective assistance of counsel because counsel (a) failed to object to the favorable and exculpatory witnesses that were withheld by the solicitor, (b) deliberately failed to raise the *Brady* violation, and (c) deliberately failed to make a motion to dismiss based upon the grounds stated above].
>
> **GROUND TWO**: <u>MOTION FOR DIRECTED VERDICT</u>
>
> **SUPPORTING FACTS**: 17. In Tr.P.129, lines 7-12, defense counsel, Stuart Mark Axelrod, made a motion for a directed verdict. The motion was premised on the fact that the evidence was "insufficient" and that it only raised "mere suspicion." The motion was denied in Tr.P.130,lines 16-18. In Tr.P.142, lines 11-13, defense counsel indicated his intention to renew his motion after the Jury' s departure. In Tr.P.l44, lines 16-23,

defense counsel renewed his motion, but he failed to raise the proper evidence. In Tr.P.145, [lines] 7-9, defense counsel [argued] once again that the entire presentation of testimony only led to mere suspicion. In Tr.P.201, lines 17-25, defense counsel renewed his motion based upon "insufficient evidence" to establish an assault of a high and aggravated nature. Finally, defense counsel requested a new trial in Tr.P.202,lines 22-23, but he failed to raise the proper grounds requiring a new trial. 18. The trial court erred by denying defense counsel's motion for a directed verdict, and this could have been reviewed by the South Carolina Court of Appeals. . . . As a result of the deprivation of an appeal by defense counsel's ineffective assistance, Petitioner is prejudiced by counsel's error, where this erroneous ruling has not been reviewed, which is a violation of Petitioner's sixth and fourteenth amendment rights protected by the United States Constitution.

**GROUND THREE**: <u>DENIAL OF APPEAL</u>.

**SUPPORTING FACTS**: The Petitioner is prejudiced by defense counsel's failure to file [a] notice of appeal, [where Petitioner asked counsel to appeal after trial and sentencing].

**GROUND FOUR**: <u>BRADY VIOLATION</u>.

**SUPPORTING FACTS**: The prosecution suppressed exculpatory and favorable evidence to conceal the truth from emerging at trial, trial, where the solicitor withheld the testimony of the eyewitness Coy Marshal Jones, and private investigator, Gerald J. Roumbehler.

**GROUND FIVE**: <u>PROSECUTORIAL MISCONDUCT</u>.

**SUPPORTING FACTS**: In addition to the aforementioned violation, which constitutes prosecutorial misconduct, the solicitor, Matthew J. Modica, bribed Ms. Powell with a $ 1200 dollar restitution case that he was handling for her to induce her to commit perjury so that he could obtain a conviction against Petitioner. (Tr.P. 78, lines 2-5, 10).

**GROUND SIX**: <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>.

**SUPPORTING FACTS**: The transcript of record evinces that defense counsel's representation fell below an objective standard of reasonableness, and that Petitioner was prejudiced by defense counsel's deficient performance. First, defense counsel failed to make a motion to dismiss on the grounds of insufficient evidence, which may have ended the prosecution of

Petitioner, or at the least, preserved the issue for appeal. Secondly, defense counsel failed to conduct effective cross and recross examination during trial, and he failed to introduce the testimony of the eye witness and private investigator, who were both critical to the defense. Thirdly, defense counsel failed to effectively argue and preserve the defense's motion for a directed verdict and a new trial. Lastly, defense counsel failed to file notice of appeal after being instructed by Petitioner and his family to do so, and this deprived Petitioner of a meaningful defense and review, in which the outcome could have been different. As a result of defense counsel's errors, which prejudiced Petitioner in his defense, Petitioner has been deprived of effective representation, due process, equal protection of the law, and a fair trial, which is a violation of Petitioner's sixth and fourteenth amendment rights protected by the United States Constitution.

**GROUND SEVEN**: ACTUAL INNOCENCE.

**SUPPORTING FACTS**: 24. Outside and inside the record reveals that Petitioner is innocent.(see P.2-272). The pictures that were taken of Ms. Powell clearly reveal that there was no battery. The record reveals no serious bodily injury.(see P.8,l14,and 163). Ms. Powell testified that she tried to explain what happened to the magistrate, victims advocate, and the solicitor, but they did not listen to her. Ms. Powell testified that she did not talk to anyone with the 911 agency, and that she only dialed the number to scare Petitioner into going home. Ms. Powell testified that she attacked Petitioner in front of the eye witness, but Petitioner never hit her. Ms. Powell testified that Petitioner's words never placed her in fear. Ms. Powell testified that the solicitor tried to bribe her. Therefore, the record conclusively establishes that Petitioner is innocent. Lastly, Ms. Powell has had over 10 males, who dated her, "jailed", and she also has a criminal history of attacks.(See P.679-682).

**GROUND EIGHT**: NEW RELIABLE EVIDENCE.

**SUPPORTING FACTS**: 29. After Petitioner's trial he discovered that a private investigator, Gerald J. Roumbehler, investigated this matter prior to trial. (see P.683-688, Exhibit 113). Investigator Roumbehler's exculpatory and favorable testimony was required in Petitioner's trial, and it was critical to his defense. If the jury would have heard the private investigator's trustworthy testimony, the trial would have been considered by the jury in a different light, and it is more than probable that the jury would have found Petitioner not guilty. The deprivation of this witness's testimony, which was caused by defense counsel

and the solicitor, denied Petitioner his sixth amendment right to present and examine the witness, a fair trial, effective representation, and his fourteenth amendment right to due process and equal protection of the law, and this prejudiced Petitioner in his defense, which is a violation of the United States Constitution.

30. Most importantly, Coy Marshal Jones is a reliable eyewitness. Mr. Jones told investigator Lambert what happen, and investigator Lambert was enlightened. Nevertheless, Mr. Jones's testimony was suppressed by defense counsel and the prosecution, and this prejudiced Petitioner's defense. Mr. Jones's exculpatory and favorable testimony was required in Petitioner's trial, and it was critical to his defense. If the jury would have heard the trustworthy testimony of Mr. Jones, the trial would have been considered by the jury in different light, and it is more probable that the jury would have found Petitioner not guilty. The deprivation of this eye witness' testimony, which was caused by defense counsel and the solicitor, denied Petitioner his right to present and examine the witness, a fair trial, effective representation, and his fourteenth amendment right to due process and equal protection of the law, and this prejudiced Petitioner in his defense, which is a violation of the United States Constitution.

**GROUND NINE**: PCR ACTION 04-CP-22-586.

**SUPPORTING FACTS**: The Petitioner has been deprived of his right to notice, to present evidence, and to be heard in his first Post- Conviction Relief Application.

**GROUND TEN**: PCR ACTION 07-CP-22-912.

**SUPPORTING FACTS**: After Petitioner discovered that his first PCR was dismissed one (1) month prior to his confinement, he immediately filed a second PCR application on July 10, 2007. (R.p.33l-342).i The State made its Return on August 9, 2007 (R.p.349-356), and afterward Petitioner was taken through a chain of attorneys. (R.p.368,370,420-430),and Petitioner finally ended with attorney R. Scott Joye, who was partners with attorney Wesley Locklair, an attorney that Petitioner filed PCR action 07-CP-22-ll27 against. (R.p. 500). A hearing was held on May 1, 2008, and attorney Joye abandoned Petitioner in the proceeding. As a result, the Petitioner did not receive a fair hearing and his PCR request was [erroneously] denied as being successive and untimely.

**GROUND ELEVEN**: DENIAL OF DUE PROCESS AND EQUAL PROTECTION OF THE LAW.

**SUPPORTING FACTS**: Attorney Joye, PCR counsel for Petitioner in 07-cP-22-1127, purposefully abandoned Petitioner in the PCR action by neglecting to properly argue Petitioner's PCR issues in the PCR hearing, and by his failure to preserve the issues that are raised in this petition. As indicated by the PCR record, Petitioner raised PCR counsel's ineffectiveness in the PCR hearing, which should be considered in this action as a violation of Petitioner's right to due process and equal protection of the law. It is indisputable that PCR counsel made absolutely no effort to advocate and help Petitioner present his issues in the PCR hearing, and PCR counsel should be held accountable for neglecting Petitioner's constitutional rights, or otherwise, this neglect will continue in all PCR cases in which attorneys are given unchecked power to neglect PCR cases without consequence of such neglect, and this is a severe miscarriage of justice. The core of due process is meaningful opportunity to be heard, and equal protection of the law requires that all persons be treated alike under like circumstances; therefore, PCR counsel's deprivation of Petitioner's due process right to meaningfully present his PCR issues and his liberty interest created by state statutes should be considered in this action along with it being a denial of Petitioner's right to equal protection of the law. (R.p.557-575), where Petitioner has been severely prejudiced by PCR counsel's inaction.

**GROUND TWELVE**: DOUBLE JEOPARDY.

**SUPPORTING FACTS**: The Petitioner is currently serving 4 [and] 1/2 years for this offense in 03-GS-22-246, however, this offense has been expired since November 10, 2005. Consequently, Petitioner is being punished twice for the same offense.

**GROUND THIRTEEN**: CRUEL AND UNUSUAL PUNISHMENT.

**SUPPORTING FACTS**: The Petitioner is being forced to serve 03-GS-22-246, which is a concurrent sentence, consecutive, at this time. In addition, Petitioner is being forced to serve said sentence, which has expired, a second time. As a result, the Petitioner is being subjected to cruel and unusual punishment in violation of his eighth amendment right that is protected by the United States Constitution, and the South Carolina state courts is ignoring this constitutional deprivation. Therefore, the only remedy that is available is the Writ of Habeas Corpus.

**GROUND FOURTEEN**: <u>TIMELINESS OF THE PETITION</u>.

**SUPPORTING FACTS**: This is an actual innocence claim. Outside of this claim, the Final Judgement of the South Carolina Supreme Court was entered on October 8, 2008. (R.p.826-828). Upon consideration of whether time has been tolled, Petitioner submits that he filed his first PCR application on July 24, 2004, which is 94 days after he was sentenced on April 22, 2004. From this time the clock should stop due to the fact that Petitioner's trial attorney failed to appeal; where his PCR attorney failed to appeal 04-CP-22-586, and because discovery of the failure of PCR counsel to appeal was not made until sometime in July 2007, at which time an Austin PCR application in 07-CP-22-912 was filed. Lastly, the Kershaw Correctional Institute does not hold a current statute of section 2244 of the U.S. Code, and as a result, the Petitioner was misled by the 1994 bound volume.

On November 16, 2009, the respondent filed a motion for summary judgment. By order filed November 17, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On December 9, 2009, the petitioner moved for and was granted an extension of 34 days, through January 25, 2010, to respond to the motion for summary judgment. On January 20, 2010, the petitioner filed another motion for extension of time to respond, which was granted through February 18, 2010. The petitioner filed his response to the motion for summary judgment on January 27, 2010.

On January 29, 2010, the petitioner filed a motion to compel discovery and a motion for leave to serve interrogatories. On February 9, 2010, he filed a motion to "Relax Federal Rules of Civil Procedure." This motion was found to be moot on February 11, 2010. On February 16, 2010, the respondent filed her opposition to the motions to compel and the motion for leave to serve interrogatories. Both of these motions were denied by order filed February 19, 2010.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Title 28, United States Code, Section 2244(d), provides:

(1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court

17

and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

## ANALYSIS

The respondent first argues[3] that the petition is untimely under the one-year statutory deadline set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). This court agrees. The one-year time period runs from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." *Id.* § 2244(d)(2). State collateral review tolls the one-year statute of limitations under § 2244(d)(1)(A) for properly filed pleadings, *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), but it does not establish a right to file within one year after completion of collateral review. *Harris v. Hutchinson*, 209 F.3d 325. 328 (4th Cir. 2000). Further, the tolling period for state collateral review does not include the time for filing a petition for certiorari in the United States Supreme Court. 28 U.S.C. § 2244(d)(2); *Lawrence v. Florida*, 549 U.S. 327, 331-36 (2007) ("Read naturally, the text of the statute must mean that the statute of limitations is tolled only while state courts review the application. ... [A]llowing the statute of limitations to be tolled by certiorari petitions would provide incentives for state

---

[3]As this court recommends that the petition be dismissed as untimely, the respondent's remaining arguments will not be addressed.

18

prisoners to file certiorari petitions as a delay tactic. By filing a petition for certiorari, the prisoner would push back § 2254's deadline while we resolved the petition for certiorari. This tolling rule would provide an incentive for prisoners to file certiorari petitions – regardless of the merit of the claims asserted – so that they receive additional time to file their habeas applications").

Here, the petitioner's state court conviction became final on May 3, 2004, the day after he could have timely filed a notice of appeal of his conviction on April 22, 2004. *See* Rule 203(b)(2), SCACR (must file notice of appeal within ten days of conviction). Accordingly, the limitations period expired on May 3, 2005, unless the period was at any time tolled for any properly filed state PCR application. 28 U.S.C. § 2244(d)(2).

The petitioner filed his first *pro se* PCR application (04-CP-22-586) on July 29, 2004. At that point, 87 days of non-tolled time had run since the period of limitations began. Proceedings in the PCR case (04-CP-22-586) became final 30 days after Judge Breeden filed his November 1, 2006, Order of Dismissal. See Rule 203(b)(1), SCACR ("A notice of appeal shall be served on all respondents within thirty (30) days after receipt of written notice of entry of the order or judgment"). Thus, the PCR action became final on December 1, 2006.[4]

The petitioner filed a second *pro se* PCR application (07-CP-22-0912) on July 10, 2007. On May 15, 2008, Judge John signed a Final Order of Dismissal (Statute of Limitations; Successive), in which he dismissed the application with prejudice. He found that it was successive and barred by the statute of limitations and that the petitioner had failed to prove that he was entitled to raise his allegations in a successive application. The South Carolina Supreme Court filed an order dismissing the petitioner's appeal on August 1, 2008, pursuant to Rule 227(c) because "[P]etitioner has failed to show that there

---

[4]The respondent states the PCR action became final on November 31, 2006; however, there are only 30 days in November.

19

is an arguable basis for asserting that the determination by the lower court was improper." It sent the remittitur to the Georgetown County Clerk of Court on October 8, 2008.

As argued by the respondent, however, this second PCR application did not toll the period of limitations as it was not "properly filed" since it was dismissed as barred by the state statute of limitations for filing PCR applications. *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (finding that time-barred applications for state collateral review are not "properly filed" applications that trigger statutory tolling). The United States Supreme Court stated in *Pace*:

> In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

*Id.* at 413. Accordingly the limitations period for the petitioner's federal habeas petition began running again on November 31, 2006, after the first PCR action was final, and there was no statutory tolling for the second PCR action.

As the petitioner is a prisoner, he should have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), which held that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the District Court. Giving the petitioner every benefit of the doubt, the court will assume he delivered the petition to prison authorities for mailing to the court on July 31, 2009, the date he signed the petition and cover letter. Thus, another 973 days of non-tolled time ran between the date the petitioner's PCR appeal concluded (December 1, 2006) and the date he filed his federal petition (July 31, 2009). Accordingly, the petition was filed 1,060 days (973 days + 87

days) after his convictions became final, nearly two years after the statute of limitations expired.

In his petition, the petitioner argues that he is entitled to equitable tolling of the limitations period. He contends as follows:

> Upon consideration of whether time has been tolled, Petitioner submits that he filed his first PCR application on July 24, 2004, which is 94 days after he was sentenced on April 22, 2004. From this time the clock should stop due to the fact that Petitioner's trial attorney failed to appeal; where his PCR attorney failed to appeal 04-CP-22-586, and because discovery of the failure of PCR counsel to appeal was not made until sometime in July 2007, at which time an Austin PCR application in 07-CP-22-912 was filed. Lastly, the Kershaw Correctional Institute does not hold a current statute of section 2244 of the U.S. Code, and as a result, the Petitioner was misled by the 1994 bound volume.

Petition, p. 28.

In *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000), the Fourth Circuit Court of Appeals described the analysis of a claim of equitable tolling as follows:

> "As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999). The doctrine has been applied in "two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir.1996) (citation omitted). But any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Id.* at 330.  The court went on to find:

> Harris argues that equitable considerations justify tolling in his case because the missed deadline was the result of an innocent misreading of the statutory provision by his counsel. While we agree that the mistake by Harris' counsel appears to have been innocent, we cannot say that the lawyer's mistake in interpreting a statutory provision constitutes that "extraordinary circumstance" external to Harris that would justify equitable tolling. *See Taliani*, 189 F.3d at 598 (holding that a lawyer's miscalculation of a limitations period is not a valid basis for equitable tolling); *see also Sandvik*, 177 F.3d at 1272 (refusing to toll the limitations period where the prisoner's delay was assertedly the result of a lawyer's decision to mail the petition by ordinary mail rather than to use some form of expedited delivery); *Fisher*, 174 F.3d at 714-15 (refusing to toll limitation where access to legal materials that would have given notice of the limitations period was delayed); *Miller v. Marr*, 141 F.3d at 978 (same); *Gilbert v. Secretary of Health and Human Services*, 51 F.3d 254, 257 (Fed. Cir.1995) (holding that a lawyer's mistake is not a valid basis for equitable tolling); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (refusing to apply equitable tolling where the delay in filing was the result of a plaintiff's unfamiliarity with the legal process or his lack of legal representation).

*Id.* at 330-31.

*Harris* specifically cited a case with approval that held a plaintiff's unfamiliarity with the law and lack of counsel were insufficient to overcome the limitations period.  *See Barrow v. New Orleans S.C. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991) (cited in *Harris*, 209 F.3d at 331).  Furthermore, the ineffectiveness of collateral counsel cannot justify equitable tolling as there is no constitutional right to counsel in state PCR.  *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *see also Lawrence v. Florida*, 549 U.S. 327, 337 (2007).  The absence of an adequate law library likewise does not justify equitable tolling.  The bare allegations of denial of access to a law library are not sufficient, standing alone, to entitle a petitioner to equitable tolling.  Instead, a petitioner must present evidence regarding the steps he took to diligently pursue his remedies during the time that he was allegedly deprived of access to legal materials.  The petitioner must "demonstrate that the alleged

shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351(1996). *See Cross-Bey v. Gammon*, 322 F.3d 1012, 1015-16 (8th Cir. 2003) (rejecting equitable tolling where petitioner alleged lack of legal knowledge and legal resources); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2002) (recognizing that the lack of access to library material does not automatically qualify as grounds for equitable tolling).

Here, the petitioner has failed to show that he was prevented from timely filing by extraordinary circumstances that were beyond his control. Accordingly, equitable tolling of the statute of limitations is not merited. Based upon the foregoing, the petition was not timely filed, and it is barred by Section 2244(d)(1).

## CONCLUSION AND RECOMMENDATION

Being "mindful that Congress enacted § 2244(d) 'with the ... purpose of curbing the abuse of the statutory writ of habeas corpus,'" *Allen v. Mitchell*, 276 F.3d 183, 186 (4th Cir. 2001) (quoting *Crawley v. Catoe*, 257 F.3d 395, 400 (4th Cir. 2001)), this court concludes that the petition in this case was untimely filed, even when properly tolled.

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 18) be granted. *See Rouse v. Lee*, 339 F.3d 238, 257 (4th Cir. 2003) (affirming dismissal of petition filed one day late), *cert. denied*, 541 U.S. 905 (2004).

s/Kevin F. McDonald
United States Magistrate Judge

July 19, 2010

Greenville, South Carolina

23